UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FILED
APR - 6 2012
USDC WP SDNY

Debra Ann Bader,                    )
                                    )
                                    )
                                    )
           Plaintiffs,              )
                                    ) Civil Action No. _____
Vs.                                 )
                                    )
                                    )   12 CV 2675
                                    )
Citigroup Inc, Citimortgage, Inc,   )
Rosicki, Rosicki & Associates PC,   )
Kelly Ann Poole Esq., Daniel Wade Esq., )   JUDGE SULLIVAN
and Jennifer Warren                 )
           Defendant's.             )

## COMPLAINT

## JURY TRIAL DEMANDED

### JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C § 1331, 28 U.S.C § 1332, 15 U.S.C. §1692k (d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2. This case concerns the unfair, deceptive and fraudulent practices of all Defendants upon Plaintiff. Plaintiff brings this action against defendants as a remedy for fraud, negligent misrepresentation, conversion, breach of contract, breach of good faith and fair dealing, unconscionable acts, unjust enrichment, violations of the New York State General Business Law § 349 and violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), .

3. Venue is proper in this district because the acts and transactions occurred in this district, Plaintiff resides in this district and Defendants transact business in this district.

## PARTIES

4. Plaintiff Debra Ann Bader hereinafter ("Plaintiff"), is a natural persons residing in the County of New York, State of New York, and individually and/or collectively is a "consumer" as that term is defined by 15 U.S.C. § 1692a (3).

5. Defendant Citigroup, Inc., hereinafter ("Citi"), on information and belief is a banking association under the laws of the United States, and doing business in New York County, New York. Citi, is incorporated under the laws of the State of Delaware. Additionally, the defendant is a foreign corporation registered with the New York Department of State as a domesticated foreign business corporation.

6. Defendant Citimortgage, Inc., hereinafter ("CMI"), on information and belief is a wholly owned subsidiary of Citi. Additionally, the defendant is a corporate fiduciary registered with the New York Department of State as a domesticated business corporation. Defendant produces mortgage loans on a national scale, most of which are or were sold into the secondary market. Defendant generally performs the ongoing servicing functions related to mortgage loans that it produces.

7. Defendant Rosicki, Rosicki & Associates, PC., hereinafter ("Rosicki"), on information and belief is a debt collection law firm operating from an address of 51 E. Bethpage Road Plainview, NY 11803. At all times pertinent hereto Defendant has been and continues to be in the business of collecting debts in various states, including but not limited to New York. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

8. Defendant Kelly Ann Poole Esq., hereinafter ("Poole"), on information and belief was and is the directing partner of foreclosures at Rosicki, a debt collection law firm operating from an address of 51 E. Bethpage Road Plainview, NY 11803. At all times pertinent hereto Defendant has been

and continues to be in the business of collecting debts in various states, including but not limited to New York. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

9. Defendant Daniel Wade Esq., hereinafter ("Wade"), on information and belief was the attorney assigned and the individual directly responsible for the handling of plaintiffs foreclosure action at Rosicki, a debt collection law firm operating from an address of 51 E. Bethpage Road Plainview, NY 11803. At all times pertinent hereto Defendant has been and continues to be in the business of collecting debts in various states, including but not limited to New York. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

10. Defendant Jennifer Warren., hereinafter ("Warren"), on information and belief was and is the managing director of foreclosures at Rosicki, a debt collection law firm operating from an address of 51 E. Bethpage Road Plainview, NY 11803. At all times pertinent hereto Defendant has been and continues to be in the business of collecting debts in various states, including but not limited to New York. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## GENERAL FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

11. On November 19, 2002 Plaintiff and CMI enter into a fixed rate note agreement to facilitate the purchase of an cooperative apartment located at 475 FDR Drive Apt L1507 New York, NY. Plaintiff has incurred a financial obligation that was primarily for personal, family or household purposes, and are therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

12. From November 2002 until May 2009 Plaintiff continued making her monthly loan payments without being over thirty days past due.

13. Plaintiff then failed to make the May 2009 and June 2009 scheduled loan payments to CMI.

14. Plaintiff resumes her monthly scheduled payments in July of 2009 making them up to and including September 2010. During this time Plaintiff pays some additional money above and beyond her scheduled monthly payments in an attempt to satisfy the two missed payments, but did not pay enough to repay the two previously missed payments.

15. In August 2009, CMI decides they are going to purchase flood insurance for Plaintiff's Cooperative Apartment. At no time during the prior seven years did CMI require, demand, purchase or otherwise request such a policy directly from Plaintiff. As Plaintiff's residence is part of a cooperative apartment such flood insurance is maintained by the cooperative board as Plaintiff has no direct ownership of the building, plaintiff only owes shares in the East River Housing Corporation.

16. CMI was aware of Plaintiff's lack of direct ownership in anything other then shares, but regardless decides to purchase an insurance policy that was unnecessary and unwarranted and created the downward spiral that lead to CMI eventually foreclosing on Plaintiff's note.

17. Upon receipt of a notice from CMI dated 8/3/09 Plaintiff repeatedly called CMI in an attempt to advise them that she is not directly required to obtain such flood insurance.

18. On multiple instances Plaintiff was met by employees on the telephone who did not know what a cooperative apartment was nor what was required by the way of insurance for a cooperative apartment or could not understand her situation due to some language barrier of the employee.

19. This situation continued to frustrate Plaintiff, but she continued to make her monthly payments. While Plaintiff continued to make her monthly loan payments, CMI without notifying plaintiff, was no longer applying the payments to the scheduled amount due since January 2010.

20. Even though she was being told by CMI representatives to ignore the default notices she was receiving on her monthly billing statements, Plaintiff in an attempt to rectify the two payments she was in arrears applied to CMI for a loan modification.

21. On August 27, 2010, Plaintiff receives a notice from CMI that her modification was approved. In the notice CMI displays information regarding her current loan versus the new modified loan.

The principal after the modification was going to increase by over six thousand dollars, even though she was only two payments behind (total of interest and principal for the two payments missed $2065.88). In addition the amounts for the current loan were wrong because they showed that she had an escrow payment due each month of $289.16 resulting in a monthly payment of $1322.10. Her payment for the last seven years had been $1032.94. This increased amount was an attempt by CMI to repay the flood insurance they had just placed on the account. At the end of the day the whole modification plan was based upon improper amounts and Plaintiff did not sign the agreement.

22. Plaintiff contacted CMI and advised them of the errors and no one from CMI returned her calls.

23. A review of Plaintiff's monthly statements show that CMI had applied an escrow charge of $289.16 to the bill beginning some in 2009.

24. CMI knew or should have known that such an escrow account was unnecessary for a cooperative apartment as all necessary insurance coverage, taxes and maintenance, are handled directly by the corporation that owns the building.

25. It was at this point that Plaintiff began to feel an elevated level of anxiety and frustration dealing with CMI. She began to seek care from a doctor for depression and anxiety directly related to this ongoing mortgage issues that appeared to have no end.

26. As Plaintiff continued to make her monthly payments she would ask the representatives taking her payment if she had any issues with the status of her loan. On multiple occasions she was told "no" and to ignore any statements or notices she was receiving to the contrary.

27. Plaintiff told the representatives at CMI on several occasions that she had received notices stating her loan was in default. The representative routinely advised Plaintiff that these notices were from a computer glitch and to ignore them.

28. In October 2010, Plaintiff calls CMI to make her monthly payment. The representative states to Plaintiff that he is unable to take her payment because her loan is now in "foreclosure" status. Plaintiff asks the representative how this could be the case as she has been paying her monthly

5

payments every month for the last fourteen months. The representative states he can not take her payment at this time because if he does "he could be fired".

29. It is at this point that Plaintiff nearly has a nervous breakdown. She begins to call CMI from work during the day as well as at home in an attempt to find out what has happened and why her account is now in foreclosure status.

30. She is met with a never ending chorus from CMI representatives that they are unable to help her.

31. On November 2, 2010, Plaintiff receives a notice from CMI advising her that the flood policy they purchased over a year before is being cancelled and that the escrow account that was billed was being refunded. This letter says nothing about the current foreclosure status of the loan.

32. On November 5, 2010 Plaintiff sends a fax note to a Mr. Wade regarding a previous telephone conversation concerning the foreclosure status of her loan. She pleads with Mr. Wade to assist her with the ongoing problem.

33. Unbeknownst to Plaintiff, Mr. Wade is actually Daniel Wade Esq., an attorney with Rosicki and not an employee of CMI as Plaintiff originally thought. At no time does Mr. Wade identify himself as an attorney for Rosicki, instead he proceeds to advise Plaintiff that she should set aside her payments and stop her pursuit of attempting to make payments to which Plaintiff relies to her detriment.

34. On November 22, 2010 Plaintiff again faxes a note to Mr. Wade. With this note she includes a copy of the Certificate of Insurance from the corporate owner of the building in which her apartment is located. She states to Mr. Wade that she has spoken to Ms. Brown in CMI's escrow department about the issue of the improper escrow situation. She requests to be advised of the resolution of this matter.

35. To date Mr. Wade never replied to Plaintiff. At this point Mr. Wade knew or should have known that the matter that he had been given to pursue had potential issues of improper accounting and should have exercised due diligence by contacting his superiors, Poole and Warren and/or his

client, CMI and clarified the amounts in questions and/or clarified whether or not this file should truly be in his office for the pursuit of a foreclosure.

36. After receiving no replies from Mr. Wade and after speaking with a CMI representative Brandon Bond, Plaintiff sends a letter to CMI's Executive Response Unit in O'Fallon MO dated November 24, 2010.

37. In this letter Plaintiff again explains her situation and pleads for someone to take responsibility and fix the errors made over the last year and half and the errors currently being made by pursing a foreclosure.

38. To date Plaintiff has not received a response from Mr. Wade nor has she received a response from CMI's Executive Response Unit.

39. On December 16, 2010 Plaintiff files for leave from her employer under the Family and Medical Leave Act. It is at the advice of her treating physician, Dr. Michele Martinho that she takes time off from work due to her anxiety and panic attacks being brought on and exacerbated by the ongoing situation with CMI. For weeks beginning at this time and extending into the new year her teenage son observes her crying and curled up in ball in her bedroom completely distraught over the thought of losing her home.

40. At one point her son, in an attempt to comfort her tells her she should go to the hospital to get better. Plaintiff, being a single parent, threats even more so now at the thought of having to be hospitalized with no one to care for her son.

41. On or about February 8, 2011, Plaintiff receives a certified mail notice from Daniel Wade, Esq., of Rosicki, advising her that the firm has been retained to commence appropriate legal proceedings to foreclose the lien on the stock and proprietary lease held by CMI.

42. In this notice, Rosicki is demanding $13, 675.62 for unpaid monthly payments. Along with late charges of $227.15, advances of $349.50 (that are unspecified and not explained) and unapplied funds of $(2116.50), for a total an amount due for present arrears - $12,135.77.

43. At this point in time Plaintiff knows of only two payments from 2009 being owed (2 x $1032.94) totaling $2065.88 and six payments from October 2010 (the first month they refused to take her payment) to March 2011 (6 x $1032.94) totaling $6197.64. Plaintiff owes CMI $8263.52 for missed payments plus the late charges of $227.15 and "unknown" advances of $349.20.

44. The total of these amounts equals $8839.87, yet Rosicki is demanding the Plaintiff pay $12,135.77 an additional amount of $3295.90 over and above what was really owed.

45. On or about March 4, 2011, Plaintiff retains the law firm of Robert L. Reda, PC to attempt to modify her mortgage obligation.

46. The law firm forwards to Rosicki an authorization to release information concerning the Plaintiff's note.

47. On or about April 8, 2011 the Plaintiff and her lawyer receive certified letters advising them of a notice of sale, scheduled for April 20, 2011.

48. It is on April 8, 2011 that Rosicki, via facsimile receives the breakdown amounts to reinstate Plaintiff's loan.

49. Now Rosicki is demanding the total amount of $17, 047.72 to reinstate the loan. The new amount includes a demand for April's monthly scheduled payment and a demand for the May payment (before it is even due). Total monthly payments being demanded is $15,741.50. The late charges now being demanded have more then doubled to $495.60. A new property inspection fee is being charged of $319.50. The advances have nearly tripled to $875.87 and Rosicki is now imposing legal fees totaling $1,731.75.

50. On April 14, 2011, Plaintiff's attorney advises Rosicki, via facsimile, that there are potential irregularities in their calculations of the amounts being demanded. The firm offers to pay the amount they believe is due. The firm also requests that CMI, due to inaction and mistake, waive all other fees.

51. At this point, Rosicki again knew or should have known that the matter that they had been given to pursue had potential issues of improper accounting and should have exercised due diligence

8

by contacting their client and clarified the amounts in questions and/or clarified whether or not this file should truly be in their office for the pursuit of a foreclosure. This matter should have been brought to the attention of Poole, the directing partner of foreclosures at Rosicki or at the minimum to Warren, the director and manager of foreclosure operations at Rosicki. At the very least Rosicki should have advised Plaintiff's attorney that they would review their claims and adjourn or postpone the sale scheduled for April 20, 2011 until the matter could be verified.

52. Rosicki instead does nothing. Rosicki does not even bother to acknowledge receipt of counsel's note or as a professional courtesy reply to Plaintiff's counsel.

53. Finally, on April 18, 2011, Plaintiff, through the assistance of family, procures a bank check in the amount of $17,047.72. Plaintiff believes there is nothing more she can do and at this point she is emotionally drained and beside herself with feelings of anxiety and depression over the thought of losing her families home.

54. The payment is sent overnight mail to Rosicki to arrive on April 19, 2011, the last day listed on Rosicki's letter to reinstate the loan for $17,047.42 or face even more charges.

55. Plaintiff receives a letter from CMI date June 24, 2011. This letter attempts to address Plaintiff's issues regarding her mortgage loan and reinstatement payment. Along with this letter Plaintiff receives pages of what appear to be printouts from CMI detailing her payments and the applications of her payments by CMI.

56. Shortly after receiving the letter of June 24, 2011, Plaintiff receives a reimbursement check from CMI in an amount exceeding $3000.00.

*Summary*

57. Plaintiff has suffered actual damages as a result of CMI's inaction, mistake, misrepresentations, over billing, improper purchase of insurance and improper filing of the foreclosure in the form of humiliation, anger, anxiety, emotional distress, fear, frustration, embarrassment, depression amongst other negative emotions.

58. Plaintiff has also suffered actual damages as a result of Rosicki's illegal collection activities in the form of humiliation, anger, anxiety, emotional distress, fear, frustration, embarrassment, depression amongst other negative emotions.

## TRIAL BY JURY

59. Plaintiff is entitled to and hereby respectfully demands a trial by jury. U.S. Const. amend. 7. Fed.R.Civ.P. 38.

## CAUSES OF ACTION

COUNT 1.

VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

15 U.S.C. § 1692 ET SEQ.

60. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

61. The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the FDCPA, including but not limited to the following:

   a. Rosicki's transmittal of the February 3, 2011 notice demanding payment in the amount of $13,675.62 for unpaid monthly payments constituted the false representation of the amount of a debt in violation of 15 U.S.C. § 1692e (2)(A);

   b. Rosicki's transmittal of the February 3, 2011 notice demanding payment in the amount of $349.50 for Advances constituted the false representation of the amount of a debt in violation of 15 U.S.C. § 1692e (2)(A);

   c. Rosicki's transmittal of the February 3, 2011 notice demanding payment in the amount of $349.50 for Advances constituted the collection of an amount (including any interest, fee, charge, or expense incidental to the principal obligation) not expressly authorized by the agreement creating the debt or permitted by law in violation of 15 U.S.C. § 1692f (1);

   d. Rosicki's transmittal of the February 3, 2011 notice demanding payment in the amount of $12,135.77 for present arrears constituted the false representation of the amount of a debt in violation of 15 U.S.C. § 1692e (2)(A);

   e. Rosicki's transmittal of the April 8, 2011 notice demanding payment in the amount of $15,741.50 for unpaid monthly payments constituted the false representation of the amount of a debt in violation of 15 U.S.C. § 1692e (2)(A);

    f. Rosicki's transmittal of the April 8, 2011 notice demanding payment in the amount of $17,047.72 for total to reinstate constituted the false representation of the amount of a debt in violation of 15 U.S.C. § 1692e (2)(A);

    g. Rosicki's transmittal of the April 8, 2011 notice demanding payment in the amount of $319.50 as a property inspection fee constituted the false representation of any services rendered by any debt collector for the collection of a debt in violation of 15 U.S.C. § 1692e (2)(B);

    h. Rosicki's transmittal of the April 8, 2011 notice demanding payment in the amount of $875.87 for other Advances constituted the false representation of any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt in violation of 15 U.S.C. § 1692e (2)(B);

    i. Rosicki's transmittal of the April 8, 2011 notice demanding payment in the amount of $875.87 for other Advances constituted the collection of an amount (including any interest, fee, charge, or expense incidental to the principal obligation) not expressly authorized by the agreement creating the debt or permitted by law in violation of 15 U.S.C. § 1692f (1);

    j. Rosicki's transmittal of the April 8, 2011 notice demanding payment in the amount of $1,751.75 for legal fees constituted the false representation of any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt in violation of 15 U.S.C. § 1692e (2)(B);

    k. Mr. Wade's refusal to acknowledge who he was and for whom he truly worked for constituted the use of false representation or a deceptive means to collect or attempt to collect a debt or obtain information concerning a consumer in violation of 15 U.S.C. § 1692e (10).

62. The unlawful actions of the Defendants as described above were intentional and grossly negligent.

63. As a result of Defendant's foregoing conduct and violations of the FDCPA, Plaintiffs are entitled to recover actual damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorney's fees and cost pursuant to 15 U.S.C. § 1692k (a)(3), against Defendant.

## COUNT 2

## BREACH OF CONTRACT AND BREACH OF U.C.C.

## DUTY OF GOOD FAITH

64. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

65. Section 1.203 of the Uniform Commercial Code implies in "every contract of duty within this title ... an obligation of good faith in its performance or enforcement." Plaintiff contends that the relationship between the Plaintiff and CMI is governed by the Uniform Commercial Code, giving rise to CMI's duty to act in good faith and in furtherance of fair dealing.

66. CMI was required, as a matter of law, to exercise good faith in establishing escrow accounts and deposit policies and procedures. CMI breached this duty by establishing and refusing to cancel an escrow account for the payment of flood insurance that was unnecessary and unwarranted due the very nature of the note and/or security backing the note between Plaintiff and CMI.

67. These acts, practices and conduct engaged in by CMI and complained of herein were in violation of CMI's duties of good faith and fair dealing and were a proximate cause of the damages complained of herein. Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

## COUNT 3

## FRAUD AND FRADULENT MISREPRESENTATION

68. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

69. As a result of the custodial, managerial and/or contractual duties arising from the parties' banking relationship, CMI had a duty to refrain from employing fraudulent or deceptive methods regarding escrow accounts and its customer relations.

70. Nonetheless, CMI, intentionally and/or knowing violated this duty when it employed fraudulent methods and otherwise intentionally withheld vital information from the Plaintiff, causing Plaintiff to forfeit payments to CMI that created or exasperated Plaintiff's default.

71. On information and belief, CMI knew or should have known that it was unnecessary for them to require a flood insurance policy from Plaintiff throughout the relevant time period.

72. On information and belief, CMI knew or should have known that it was unnecessary for them to require an escrow account from Plaintiff for flood insurance premium payment reimbursement throughout the relevant time period.

73. On information and belief, CMI knew or should have known the true status of Plaintiff's loan.

74. On information and belief, CMI knew or should have known that CMI was in fact sending notices of default to the Plaintiff to advise her of the current default status of her loan.

75. On information and belief, CMI knew or should have known that if Plaintiff was receiving notices of default that they knew or should of known they were sending, that Plaintiff's account was in fact in default and Plaintiff should exercise additional actions to correct the default.

76. During this period, CMI fraudulently concealed and misrepresented material facts to the Plaintiff in the following ways:

    (a)    CMI fraudulently concealed and misrepresented their purchase of a flood insurance policy to the detriment of the Plaintiff;

    (b)    CMI fraudulently concealed and misrepresented their receipt of payment for this flood insurance from Plaintiff by taking such payments from Plaintiff's monthly mortgage payments and/or failing to apply the full monthly mortgage payment to the outstanding mortgage balance and instead applying only part or none of the monthly mortgage payment to the outstanding mortgage balance to the detriment of the Plaintiff;

    (c)    CMI fraudulently concealed and misrepresented CMI's actions that were being taken against Plaintiff when Plaintiff was told by CMI representative that "she had nothing to worry about – her account was fine", "she should disregard the notices of default she was receiving", "she was not in default", "the notices she was receiving were computer glitches", all to the detriment of the Plaintiff.

77. The misrepresentations, nondisclosures, and concealment of material facts by CMI, through its respective authorized agents and representatives, were false and were intended to mislead the Plaintiff. Plaintiff relied upon such misrepresentations and was deceptively induced by CMI to

continue the relationship despite CMI's retention of the funds Plaintiff thought and was lead to belief were being applied properly and thoroughly to her outstanding mortgage balance.

78. As a proximate result of the foregoing, Plaintiff suffered the damages complained of herein and, because such actions resulted in CMI's gross negligence, malice and/or actual fraud, Plaintiff is entitled to exemplary damages.

## COUNT 4

## NEGLIGENT MISREPRESENTATION

79. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

80. Upon information and belief, CMI was under both a contractual and common law duty to provide honest and truthful services to the Plaintiff. CMI violated these duties when it failed to delete and/or remove the escrow account it opened for flood insurance premium payments. CMI further violated these duties when it failed to accurately apprise Plaintiff of the true status of her loan account.

81. CMI knew, or in the exercise of reasonable diligence should have known, that such insurance was not the direct responsibility of the Plaintiff, but was instead the responsibility of the corporation from which Plaintiff owned shares and they should have exercised due diligence in verifying such and receiving the necessary if appropriate information from the correct and responsible party.

82. CMI knew, or in the exercise of reasonable diligence should have known, that such Plaintiff's account was in default, but instead negligently mislead Plaintiff into believing that her loan account was in fact in good standing and not in default. CMI should have exercised due diligence in verifying the actual status of Plaintiff's loan account and the true reason for her receipt of default notices. Such actions would have assisted her in avoiding the eventual sale threatened by CMI due entirely from their own actions.

83. Plaintiff reasonably and justifiably relied upon CMI's misrepresentations as to the status of her account and as to the actions CMI was taking in resolution of the unnecessary escrow account and as to the proper and correct application of her monthly mortgage payments.

84. As a proximate result of the foregoing, Plaintiff suffered the damages complained of herein. Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

## COUNT 5

## CONVERSION

85. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

86. Plaintiff has a legal right to have her monthly mortgage payments applied to her outstanding loan balance. CMI had, and continues to have, a duty to assure Plaintiff that those payments made by Plaintiff or made by anyone on behalf of the Plaintiff, are timely and appropriately applied to Plaintiff's outstanding balance with CMI.

87. CMI interfered with Plaintiff's possession over both Plaintiff's payments and the portions of the payments that applied to Plaintiff's outstanding principal and interest balances. Namely, CMI, acting without legal authority or justification, assumed and exercised dominion and right of ownership over the funds, and the subsequent principal and accruing interest on Plaintiff's outstanding loan balance, by taking portions of her monthly mortgage payment and applying it to an escrow account to cover flood insurance premiums and then refusing to apply the full payment or the remaining payment to the outstanding principal and interest owing on her outstanding loan balance.

88. CMI continued to unlawfully retain Plaintiff's property until October 2010 when they finally saw, after more then twelve months, the error of their actions and closed the escrow account.

89. CMI continued to unlawfully retain Plaintiff's property after October 2010 when they stopped accepting payments from Plaintiff altogether.

90. CMIs' actions amount to a wrongful conversion of Plaintiff's property in violation of New York Law.

91. As a proximate result of the foregoing, Plaintiff suffered the damages complained of herein. Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

## COUNT 6

## BREACH OF FIDUCIARY DUTY

92. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

93. CMI assumed a fiduciary duty to the Plaintiff to act as custodian of Plaintiff's payments, and, in accordance with that duty, were obligated to dispose of Plaintiff's payments only as directed in writing by the terms of the note.

94. CMI failed to disclose that Plaintiff's payments would be transferred into an escrow account to cover flood insurance premium payments owned and established by CMI in lieu of being applied as intended and agreed upon in the note agreement.

95. CMI failed to obtain affirmative consent from Plaintiff authorizing CMI to open said escrow account and transfer funds into said account and thereby retain an interest from CMI's unauthorized use and or retain and interest from CMI's unauthorized repayment of said escrow account.

96. CMI intentionally, knowingly, recklessly, negligently and/or carelessly breached the fiduciary duties owed to Plaintiff by knowingly receiving and retaining improper benefits from the unauthorized use of Plaintiff's funds. In so doing, CMI consciously disregarded Plaintiff's rights, partaking in unfair, unconscionable and oppressive banking tactics.

97. The aforementioned acts or omissions by CMI were in violation of CMI's fiduciary duties and were the proximate cause of the damages complained of herein. Plaintiff seeks unliquidated damages with the jurisdictional limits of this Court.

## COUNT 7

## UNJUST ENRICHMENT

98. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

99. A party cannot induce, encourage or manipulate another, provide or render something of value to such party and simultaneously seek to avoid providing any compensation for the value received.

100. CMIs' unauthorized use of Plaintiff's funds conferred a financial benefit to CMI whereas Plaintiff was entitled to receive appropriate application of those funds but did not. CMI was unjustly enriched at Plaintiff's expense.

101. Plaintiff alleges CMI acted with conscious disregard for the rights of Plaintiff and as a result, CMI was unjustly enriched at the expense of, and to the detriment of, the Plaintiff.

102. CMIs' unjust enrichment is traceable to, and resulted directly and proximately from, the aforementioned conduct. It is manifestly against the equities to allow CMI to retain all the benefits garnered from the illicit use of Plaintiff's funds. CMI should be compelled to disgorge these funds in the amount totaling the wrongful or inequitable proceeds received and CMI should be compelled to pay over to Plaintiff the proximate financial penalties incurred by Plaintiff due to CMIs illicit use of Plaintiff's funds.

## COUNT 8

## VIOLATIONS OF NEW YORK GBL § 349

## ENGAGING IN UNLAWFUL DECEPTIVE PRACTICES AND ACTS

103. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

104. These acts, practices and conduct engaged in by the Defendants and complained of herein constitute "deceptive acts and practices: within the meaning of Article 22A of the General

Business Law of the State of New York, NY GBL § 349.

105. The Defendants willfully and knowingly engaged in conduct constituting deceptive acts and Practices in violation of NY GBL § 349.

106. The Plaintiff has suffered and continues to suffer actual damages as a result of the foregoing acts and practices, including damages associated with, among other things, humiliation, anger, anxiety, emotional distress, fear, depression, frustration and embarrassment caused by the Defendants.

107. By virtue of the foregoing, the Plaintiff is entitled to recover actual damages, trebled, together with reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered against Defendant for:

A. an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Rosicki, Poole, Wade and Warren in an amount not less then $50,0000.00;

B. an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) against Rosicki, Poole, Wade and Warren;

C. an award of damages on counts two, three, four, five, six and seven in an amount according to proof at the time of trial;

D. an award of actual damages, trebled, pursuant to NY GBL § 349 against all Defendants, jointly and severally;

E. an award of statutory damages, pursuant to NY GBL § 349 against all Defendants, jointly and severally;

F. an award of punitive and exemplary damages against all Citi and CMI, jointly and severally;

G. an award of costs of litigation and reasonable attorney's fees

H. Interest on all of the aforementioned amounts at the maximum rate and for the maximum duration allowed by applicable law;

I. such other and further relief as may be just and proper, including the right to amend this complaint to add additional claims or additional parties after conducting appropriate discovery.

The exact nature and extent of Plaintiff's damages have yet to be calculated, and Plaintiff will seek leave of Court to amend this complaint to conform to proof at the time of trial.

Dated: April 1, 2012

M. CABRERA & ASSOCIATES, PC

Matthew M. Cabrera, Esq.
115 Franklin Turnpike, #242
Mahwah, NJ 07430
Telephone:   (845) 531-5474
Facsimile:   (845) 230-6645
mcabrera@mcablaw.com

**COUNSEL FOR PLAINTIFF**